# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>NANCY MONIZ,<br><br>                    Debtor | Chapter 13<br>Case No. 11-10593-FJB |
| In re<br><br>STACY CAMARA,<br><br>                    Debtor | Chapter 13<br>Case No. 11-10594-FJB |

**MEMORANDUM OF DECISION ON**
**MOTION OF SAINT ANNE'S CREDIT UNION FOR RELIEF FROM STAY**

      Saint Anne's Credit Union ("SACU") has moved for relief from the automatic stay under 11 U.S.C. § 362(d)(1), (2), and (4) to exercise its rights as to certain real property that the debtors in these cases own with their parents. After an evidentiary hearing and for the reasons articulated below, the Court will enter a separate order granting the relief requested.

      Nancy Moniz ("Nancy"), the debtor in Case No. 11-10593-FJB, together with her parents, Abel and Fatima Moniz, are the owners of the real property at 1382-1386 Pleasant Street and 1482-1488 Pleasant Street, Fall River, Massachusetts. Nancy's sister, Stacy Camara ("Stacy," and, with Nancy, "the daughters"), the debtor in Case No. 11-10594-FJB, together with her parents, Abel and Fatima Moniz, are the owners of the real property at 153-163 McGowan Street, Fall River. In each instance, the property was first acquired by one or both of the parents in their own names, without either daughter, as investment property. Neither the parents nor the daughters have ever resided in the properties. At all times at least through the commencement of the present cases, the parents and daughters have treated the properties as belonging to the parents alone. The parents alone managed the properties, paid the mortgages and associated expenses (to the extent these were paid at all), collected the rents, reported the rents as their income on their tax returns, and sought to reorganize the debt on the

properties in their own bankruptcy case.  The parents gave the daughters interests in the properties only when it became necessary to refinance existing mortgages on the properties and the parents could not themselves qualify for the financing.  In 2006, the daughters, at their parents' request, took title to their respective properties as tenants in common with the parents and applied for and received loans in their own names from SACU, secured by mortgages on their respective properties.  They did so only to help their parents and without intent to manage the properties, receive the income, or pay the loans themselves, trusting their parents would handle everything.

In 2008, the SACU loans went into default.  SACU notified the daughters of these defaults and initiated foreclosure proceedings and suits against the daughters and their parents.  On June 10, 2009, the parents filed a joint petition for relief under Chapter 11 of the Bankruptcy Code.  The daughters, though they clearly knew of the defaults and their parents' bankruptcy case, did not then also file bankruptcy petitions of their own.  The parents' case remained in Chapter 11 for some 19 months, during which time SACU was stayed quite unwillingly from exercising its rights as to the properties.  Their reorganization attempts failed for, among other reasons, insufficient cash flow from these and other properties to support a plan.  Notwithstanding these issues of feasibility, which were known to the parents from very early in their case, they did not enlist their daughters' financial assistance in the reorganization effort.  Nor, during the chapter 11, did the daughters commence reorganization efforts of their own as to their respective properties.  In January 2011, after the parents' failed to obtain confirmation of the fifth iteration of their plan and the Court had concluded that no reorganization was in prospect and that the parents had been afforded more than a fair opportunity to reorganize, the Court dismissed the chapter 11 case as to Abel Moniz, converted it to one under chapter 7 as to Fatima Moniz, and, on January 25, 2011, without objection, granted SACU relief from the automatic stay to exercise its rights as to the properties.

The next day, January 26, 2011, the daughters, through attorney Daniel Webster, filed the petitions commencing the present cases. Webster had by then appeared as counsel for Fatima Moniz in her chapter 7 (he was successor counsel in that case; another attorney handled the chapter 11 phase). Fatima retained Webster to represent her daughters in their cases and paid his fee for such representation from her own assets. Both daughters' cases were initially filed in error under chapter 7, and both have since been converted to cases under chapter 13. Both daughters have filed chapter 13 plans, more than one iteration in each case. Although it is clear from each plan filed to date that the debtors propose to retain the properties, their treatment of SACU's secured claim is otherwise unintelligible: they propose, at once, (1) payment of arrears through the trustee and maintenance of payments on the mortgages *and* (2) cramdown of the mortgages to the liquidation value of the properties and payment thereof over 20 years (these two treatments are, by nature and by law, mutually exclusive) *and* (3) treatment of the amount of the value of SACU's interest in the collateral as an *un*secured claim (this treatment makes no sense at all). These have been patently unconfirmable because, among other things, (1) it is impossible to understand what they propose, and (2) to the extent that they propose a "cram down," a modification of the secured claim to the present value of SACU's interest in the collateral, they improperly rely on liquidation value, and (3) the proposed 20-year period for payment of the modified secured claim is 15 years longer than is permitted in chapter 13. The success of their respective plans rests entirely on the cash flow from the properties; neither daughter appears willing (if she is able) to devote to the plan any income other than rents from the properties. In short, the daughters propose plans that are no better than were tested and found wanting in their parents' case. These plans have to date produced nothing but delay. Nor, at the evidentiary hearing, did the debtors give cause to believe that they are likely to produce better plans than they have produced to date.

Each daughter maintains that she filed her case on the basis of a good faith need for relief, offering this explanation: that if the properties are lost to foreclosure, each debtor faces a sizable deficiency,[1] and, in view of the means test, neither is eligible to be a debtor in chapter 7. Therefore, each concludes, she has need for relief under a chapter 13 plan that enables her to retain her real property.

The Court finds as follows as to their intent. Each daughter does indeed face a sizable deficiency, and probably neither is eligible for relief under chapter 7, but, as SACU persuasively argues, each would be better off (i) letting her property go to foreclosure and managing only the unsecured deficiency in a chapter 13 plan than (ii) attempting to satisfy the mortgage claims as secured debts. The daughters' purpose in electing the strategy they have chosen is to protect the properties and their cash flow *for the sake of their parents*. They have followed this strategy at the behest of their mother, who orchestrated their bankruptcy filings, the timing of those filings, and the nonparticipation of the daughters in her and her husband's chapter 11 effort. In the filing of this case and since the refinancing of the properties in 2006, the daughters have participated in a common effort with their parents to protect the properties for their parents' benefit, a scheme that now involves serial bankruptcy filings. In view of these facts—(i) that the daughters now bring no new resources to the effort, (ii) that after 6 months in bankruptcy they appear unable or unwilling to propose a confirmable plan, (iii) that they have acted in concert with their parents and especially at their mother's behest, and (iv) that they contributed nothing to the parents' chapter 11 effort when, if they had anything to offer, it should have been offered and might have made a difference—I find that the daughters filed their bankruptcy petitions as part of a scheme to delay, hinder, or defraud a creditor, SACU, that involves multiple bankruptcy filings affecting their respective properties.

---

[1] They concede they have no equity in the properties.

4

Section 362(d)(4)(B) of the Bankruptcy Code, a court "shall grant" relief from the automatic stay, insofar as the stay enjoins acts against real property by a creditor whose claim is secured by that property, "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such property." 11 U.S.C. § 362(d)(4)(B). That is precisely the case here as to both daughters, and relief under § 362(d)(4) is therefore warranted and required in both cases.

Relief is also appropriate under § 362(d)(2). That subsection requires that relief from the stay as to an act against property be granted where a debtor has no equity in the property and such property is not necessary to an effective reorganization, meaning a reorganization that is reasonably in prospect within a reasonable time. 11 U.S.C. § 362(d)(2). The debtors have no equity in their respective properties; and, as no confirmable plan that involves retaining the properties is in prospect, in neither case is the property necessary to an effective reorganization. To the contrary, the only reorganization in prospect for either daughter involves surrender of the properties to SACU for foreclosure. Having concluded that relief from the stay is warranted under subsections (d)(2) and (d)(4), the Court need not reach the various other "causes" for relief that SACU raises under subsection (d)(1). A separate order will enter granting the relief requested.

Date: July 27, 2011

_____
Frank J. Bailey
United States Bankruptcy Judge